# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 |
| PRODUCT(S): | : : | |
| In Re: Instrument Panel Clusters | : | 2:12-cv-00202 |
| In Re: Heater Control Panels | : | 2:12-cv-00402 |
| In Re: Bearings | : | 2:12-cv-00502 |
| In Re: Occupant Safety Restraint Systems | : | 2:12-cv-00602 |
| In Re: Radiators | : | 2:13-cv-01002 |
| In Re: Automotive Lamps | : | 2:13-cv-01202 |
| In Re: Switches | : | 2:13-cv-01302 |
| In Re: Ignition Coils | : | 2:13-cv-01402 |
| In Re: Steering Angle Sensors | : | 2:13-cv-01602 |
| In Re: Hid Ballasts | : | 2:13-cv-01702 |
| In Re: Electric Powered Steering Assemblies | : | 2:13-cv-01902 |
| In Re: Fuel Injection Systems | : | 2:13-cv-02202 |
| In Re: Automatic Transmission Fluid Warmers | : | 2:13-cv-02402 |
| In Re: Valve Timing Control Devices | : | 2:13-cv-02502 |
| In Re: Air Conditioning Systems | : | 2:13-cv-02702 |
| In Re: Constant Velocity Joint Boot Products | : | 2:14-cv-02902 |
| In Re: Spark Plugs | : | 2:15-cv-03002 |
| In Re: Automotive Hoses | : | 2:15-cv-03202 |
| In Re: Shock Absorbers | : | 2:16-cv-03302 |
| In Re: Body Sealing Products | : | 2:16-cv-03402 |
| In Re: Interior Trim Products | : | 2:16-cv-03502 |
| In Re: Brake Hoses | : | 2:16-cv-03602 |
| In Re: Exhaust Systems | : | 2:16-cv-03702 |
| In Re: Ceramic Substrates | : | 2:16-cv-03802 |
| In Re: Power Window Switches | : | 2:16-cv-03902 |
| In Re: Automotive Steel Tubes | : | 2:16-cv-04002 |
| In Re: Access Mechanisms | : | 2:16-cv-04102 |
| In Re: Side Door Latches | : | 2:17-cv-04302 |
| This Document Relates to: ALL DEALERSHIP ACTIONS | : : : : | Hon. Marianne O. Battani |

**ORDER REGARDING AUTO DEALERS' MOTION FOR
AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES FROM ROUND FOUR SETTLEMENTS**

The above matter came before the Court on the Auto Dealers' motion for an award of attorneys' fees and reimbursement of litigation expenses relating to a fourth round of Auto Dealer settlements ("Round Four settlements").

The Court has reviewed the memorandum submitted by the Auto Dealers in support of their motion and has also reviewed the various declarations and submissions relating to that motion.

Based on the record before the Court, it is hereby **ORDERED:**

1. The Court has considered the relevant case law and authority and finds that awards of attorneys' fees and reimbursement of expenses to the Auto Dealers and their counsel are appropriate under Fed. R. Civ. P. 23(h) and Fed.R.Civ.P. 54(d)(2). Notice of the request for fees and reimbursement of expenses was provided to the potential class members via direct and published notice and a settlement web site that identified and provided copies of relevant documents and pleadings.

2. The Court has considered the reaction of the class members to this fee request and request for reimbursement of expenses.

3. The Court engages in a two-part analysis when assessing the reasonableness of a petition seeking an award of attorneys' fees. *In re Cardinal Health Ins. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). The Court first determines the method of calculating the attorneys' fees: it applies either the percentage of the fund approach or the lodestar method. *Id.*; *Van Horn v. Nationwide Prop. & Cas. Inc. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011).

4. The Court has the discretion to select the appropriate method for calculating attorneys' fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). In common fund cases, the award of attorneys' fees need only "be

reasonable under the circumstances." *Id.*, 9 F.3d at 516. The Court has also analyzed and weighed the six factors described in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).

5. The Court will award fees to the Auto Dealers using the percentage-of-the-fund approach. This method of awarding attorneys' fees is preferred in this district because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class members. *Rawlings,* 9 F.3d at 515; *In re Packaged Ice Antitrust Litig.*, 08-MDL-01952, 2011 WL 6209188, at *16 (E.D. Mich. Dec. 13, 2011); *Delphi*, 248 F.R.D. at 502; *Cardinal*, 528 F.Supp.2d at 762 (the Sixth Circuit has "explicitly approved the percentage approach in common fund cases."); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014).

6. The Court **GRANTS** the Auto Dealers' request for reimbursement of past litigation expenses in the amount of $153,720.12, as set forth in the declarations submitted by counsel for the Auto Dealers. The past litigation expenses incurred in the general prosecution of the cases with settlements currently before the Court shall be reimbursed on a *pro rata* basis from each of the Round Four settlements.

7. The Court authorizes class counsel for the Auto Dealers to pay the costs of the Round Four settlement notice and claims administration (being handled by KCC, LLC) from the Round Four settlement funds on a *pro rata* basis.

8. Counsel for the Auto Dealers request a fee award of 30 percent of the Round Four settlements, after the cost of class notice and claim administration have been deducted. The award requested is within the range of fee awards made by courts in this Circuit. *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) (awarding one-third of the fund); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19; *Skelaxin*, 2014 WL 2946459, at *1; *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013); *Thacker v.*

*Chesapeake Appalachia*, L.L.C., 695 F. Supp. 2d, 521, 528 (E.D. Ky. 2010); *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-CV-95, 2007 WL 3173972, at *4 (W.D. Mich. 2007); *Delphi*, 248 F.R.D. at 502-03; *In re National Century Financial Enterprises, Inc. Investment Litig.*, 2009 WL 1473975 (S.D. Ohio, May 27, 2009); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503 (E.D. Mich. 2000). Other federal courts have approved fees in this range in complex antitrust class action litigation and this Court has used that percentage, or more, for other fee awards in this MDL. *See* 2:12-cv-00101-MOB-MKM (ECF Doc. No. 495, para. 22) (30 percent); 2:12-cv-00102-MOB-MKM (ECF Doc. No. 401, para. 11) (33 percent).

9. The Court has considered the six *Ramey* factors in weighing a fee award to counsel for the Auto Dealers: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis [the lodestar cross-check]; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1194–97.

10. The Court has carefully analyzed the Round Four settlements and the *Ramey* factors and concludes that the factors are met and justify a fee award to counsel for the Auto Dealers. The settlements total more than $86 million and provide substantial cash and non-monetary benefits including cooperation from the settling defendants and injunctive relief from some settling defendants to prohibit certain future conduct. Counsel has worked on a contingent basis and the results of this litigation have never been certain. The legal and factual issues are complicated, and the parties have zealously asserted their claims and defenses. Given the length and tenacity of this litigation, the Court is satisfied that the Round Four settlements were the result of arms' length and good faith negotiations between informed and experienced counsel.

Some of the settlements were only reached with the assistance of mediators and multiple mediation sessions.

11. Courts in the Sixth Circuit weigh "society's stake in rewarding attorneys [who obtain favorable outcomes for a class] in order to maintain an incentive to others," and counsel's success in complex antitrust litigation "counsels in favor of a generous fee." *Cardizem*, 218 F.R.D. at 534 (internal quotation marks omitted). The substantial Auto Dealer recoveries to-date serve a strong public policy of holding accountable those who violate United States antitrust laws, thereby promoting fair competition and pricing. *See* 2:12-cv-00103-MOB-MKM (ECF Doc. No. 578, para. 13).

12. This is an extremely complex litigation with more than 160 defendants and over 40 different Auto Dealer class actions involving different parts, different groups of alleged conspirators, and different time periods. Some of the defendants were indicted and pleaded guilty to antitrust violations while others were not indicted, did not plead guilty, or did not pay fines to a governmental entity. All defendants have vigorously disputed the applicability of Federal Rule 23 to litigated classes and have denied that the Auto Dealers sustained an antitrust injury.

13. Working on a contingent basis, counsel for the Auto Dealers have skillfully guided the cases before the Court in this motion to substantial settlements. When the Round Four settlements are added to the first three rounds of Auto Dealer settlements previously approved by the Court, nearly $385 million has been recovered for the benefit of eligible Auto Dealer settlement class members.

14. The *Ramey* factors and a cross-check of the lodestar incurred by counsel for the Auto Dealers indicate that the fee requested constitutes fair and reasonable compensation for the risks assumed, the work done, and the benefits achieved for the members of the settlement

classes. The total lodestar of counsel for the Auto Dealers presently exceeds $86,502,565.17 when using counsel's current customary rates.

15. When performing the lodestar cross-check, the Court reviewed the hourly rates of Auto Dealer counsel and find that they are reasonable for attorneys with specialized experience in bringing antitrust cases. "A reasonable hourly rate is determined according to the prevailing market rates in the relevant community. To ascertain that community, district courts 'are free to look to a national market, an area of specialization market, or any other market they believe appropriate to fairly compensate particular attorneys in individual cases." *Ford v. Fed.-Mogul Corp.*, No. 2:09-cv-14448, 2015 U.S. Dist. LEXIS 3399, at *2-3 (E.D. Mich. Jan. 7, 2015) (quoting *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002)). Even if counsel's "requested rates are high for this district. . . Class Counsel should be compensated at rates that reflect their skill and their success." *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 995 F. Supp. 2d 835, 847 (S.D. Ohio 2014).

16. The rates used by Auto Dealer counsel in this MDL are well within the parameters of reasonableness. In national markets, "partners routinely charge between $1,200 and $1,300 an hour, with top rates at several large law firms exceeding $1,400.[1] In specialties such as "antitrust and high-stakes litigation and appeals . . . [f]or lawyers at the very top of those fields, hourly rates can hit $1,800 or even $1,950." *Id.* Some "difference makers" in the most complex fields, including antitrust litigation, even charge $2,000 an hour.[2] This Court has recognized that rates in this matter

---

[1] *See* Sara Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an Hour*, The Wall Street Journal (Feb. 16, 2016), https://www.wsj.com/articles/legal-fees-reach-new-pinnacle¬1-500-an-hour-1454960708; see also Martha Neil, *Top partner billing rates at BigLaw firms approach $1,500 per hour*, ABA Journal (Feb. 8, 2016), http://www.abajournal.comnews/article/toppartner billing rates at biglaw firms nudge 1500 per hour.

[2] *See* Natalie Rodriguez, *Meet the $2,000 An Hour Attorney: What it Takes to Earn Top Dollar in the Rate-Crunch Era*, Law360, June 11, 2016, https://www.1aw360.com/in-depth/articles/804421 ("[E]arlier this year, BTI Consulting Group found that a handful of in-house counsel had paid as much as

"are well in line with the market, with recent reports explaining that senior lawyers at top law firms routinely charge well over $1,000." *See, e.g.,* 2:12-cv-00103-MOB-MKM (Doc. No. 578) at 7.

17. Interim Co-Lead Counsel for the Auto Dealers performed a thorough analysis of the Auto Dealers' attorneys' time submissions and have, in this motion and in prior motions, provided the Court with detailed information supporting their lodestar. The rates are justified by the many years of experience, expertise, and results in prosecuting antitrust class actions. Counsel for the Auto Dealers achieved excellent results while litigating claims against Defendants that are represented by some of the most skilled and prominent antitrust defense lawyers in the world.

18. The Court **GRANTS** an award of attorneys' fees to counsel for the Auto Dealers in the amount of $26,170,859.00. These attorneys' fees shall be paid on a *pro rata* basis from the net settlement funds available for each Round Four settlement currently before the Court.

19. Using the lodestar cross-check methodology and reviewing the total fees awarded with the lodestar incurred from the inception of the litigation to September 30, 2019, the 30 percent fee awarded results in a lodestar multiplier of approximately 1.19 when using counsel's customary rates. This modest multiplier is well within, if not below, the range of reasonable multipliers awarded in similar contingent fee cases. *See, e.g., In re Cardinal Health Ins. Sec. Litig.*, 528 F. Supp. 2d at 767-68 (approving multiplier of 6, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *In re Prandin Direct Purchase Antitrust Litig.*, 2015 WL 1396473, at *4 (3.01 multiplier). This fee award is reasonable considering the complexity of this litigation, the results achieved for the class members, the risks assumed by counsel for the Auto Dealers, and the work remaining to be done in this litigation.

20. If the Auto Dealers receive money from the $16,800,000.00 general, unsecured, non-priority claim in the TKH bankruptcy proceeding, counsel for the Auto Dealers are awarded,

---

$2,000 per hour, after discounts, to attorneys in the past year. Several other in-house counsel, meanwhile, had paid highs of $1,900 per hour or $1,800 per hour.")

without further order of the Court, attorneys' fees of 30 percent of any money paid pursuant to that claim.

21. Interim Co-Lead Counsel for the Auto Dealers are authorized to allocate the attorneys' fees and expenses awarded herein among counsel who performed work on behalf of the Auto Dealers in accordance with Interim Co-Lead Counsel's assessment of each firm's contribution to the prosecution of the cases involved in the settlements.

**IT IS SO ORDERED.**

Date: December 29, 2019   s/Marianne O. Battani
MARIANNE O. BATTANI
United States District Judge